# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-0692V

| | |
|---|---|
| LINDA LYKINS,<br><br>                     Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br><br><br>Filed: October 14, 2025 |

*Renee Ja Gentry, The Law Office of Renee J. Gentry, Washington, D.C., for Petitioner.*

*Camille Michelle Collett, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On January 12, 2021, Linda Lykins filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury following an influenza vaccine she received on September 11, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner has provided preponderant evidence that her symptoms were limited to her vaccinated shoulder, and that she has

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

satisfied all of the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

**I.    Relevant Procedural History**

In October, 2022, more than 18 months after the Petition was filed, the parties began settlement discussions. *See* ECF No. 25. Those discussions continued until February 2024, when they reached an impasse. *See* ECF No. 50. Respondent thereafter filed his Rule 4(c) Report opposing entitlement on April 24, 2024, in which he argued that Petitioner failed to establish that her symptoms were limited to her left shoulder. Rule 4(c) Report at 8.

Petitioner then filed a Motion for Ruling on the Record ("Mot.") on June 20, 2024. ECF No. 57. Respondent filed a response ("Resp.") on July 30, 2024 and Petitioner filed a reply ("Repl.") on September 24, 2024. ECF No. 34. The matter is now ripe for adjudication.

**II.    Relevant Facts**

Petitioner received a flu vaccine in her left shoulder on September 11, 2019. Ex. 1 at 4. Although Petitioner had a history of carpal tunnel syndrome and ulnar neuropathy, the parties agree that she had no prior history of left shoulder pain. *See* Mot. at 2; Resp. at 1. Petitioner initially experienced pain that "seemed normal," but worsened to the point that she contacted the administrator the following day. Ex. 7 at ¶3.

On October 1, 2019 (20 days after vaccination), Petitioner saw her primary care provider ("PCP") for left shoulder pain "down her arm" that "started 2 days after a flu shot." Ex. 2 at 6. She noted that she also had numbness and "a pins and needles sensation all over her entire hand." *Id*. On exam, she displayed tenderness in her cervical muscles, decreased sensation in the entire left arm from shoulder to fingers, pain over her entire shoulder, and decreased shoulder range of motion. *Id*. at 8. The doctor suspected cervical radiculopathy, but noted that his "exam was limited because she [was] unable to really move her left arm at all without pain." *Id*. at 9. X-rays of Petitioner's cervical spine revealed muscle spasms and moderate degeneration at C5-6. *Id*. at 5. Petitioner was referred for an EMG and prescribed gabapentin for pain. *Id*. at 9. On October 30, 2019, Petitioner had an MRI of her cervical spine which showed cervical spondylosis and facet arthropathy, with "disc degeneration and neural foraminal narrowing" the "most pronounced at C5-6." Ex. 3 at 63.

Petitioner first saw an orthopedist on November 4, 2019. Ex. 6 at 17. She reported a normal shoulder until she had a flu shot "a few weeks ago." *Id.* She had "significant pain

with abduction and overhead activities, but denied any numbness, tingling, or pain radiating from her neck. *Id*. Her exam revealed tenderness in the deltoid and "definite impingement" with forward elevation and abduction. *Id*. at 18. The doctor found no neurovascular deficits in the left upper extremity. *Id*. He opined that "more than likely the injection which occurred penetrated [sic] the area of the deltoid and was deeper along the area of the rotator cuff and external rotators." *Id*. at 19. He administered a cortisone injection. *Id*.

Petitioner began physical therapy on November 20, 2019. Ex. 4 at 2. She reported that she "received a flu shot on 9/11/19 in the L arm – extreme pain ever since and even lack of grip in L non-dominant hand." *Id*. Petitioner noted that she had a history of numbness in her 4th and 5th fingers due to ulnar nerve damage dating back to 1992 with impact on her grip strength. *Id*. Petitioner had four sessions through November 29, 2019 when she discontinued treatment. *Id*. at 20.

Petitioner returned to the orthopedist on December 4, 2019 with continued left shoulder pain. Ex. 6 at 14. She reported no relief from the injection or physical therapy. *Id*. On exam, her range of motion was further restricted. *Id*. at 15. Surgery was scheduled. *Id*. at 16. Petitioner saw her PCP on December 23, 2019 for pre-operative medical clearance. Ex. 9 at 26. She reported that she was "fairly certain that she did experience a post vaccination adhesive capsulitis . . . and it has only gotten worse." *Id*. An x-ray of Petitioner's left shoulder showed "minor degenerative changes of the AC joint." *Id*. at 161.

Petitioner had arthroscopic surgery on January 16, 2020. Ex. 3 at 42. Her post-operative diagnosis was "early adhesive capsulitis with impingement, rotator cuff tendonitis, and bursitis." *Id*. At her first post-operative follow up, Petitioner reported improving pain and range of motion. Ex. 6 at 12. She returned to physical therapy on February 6, 2020, and completed eight sessions through March 4, 2020. Ex. 4 at 21-51. At her last visit, Petitioner reported 65-70% improvement. *Id*. at 52. Petitioner's discharge note indicates that she stopped physical therapy due to a "plateau in progress." *Id*. at 54. She states that she continued to do "PT at home." Mot. at 6.

Almost three years later, Petitioner returned to her PCP for treatment for her left shoulder. Ex. 49. She reported that her pain started September 11, 2019, and that she was "still having the pain if she raises [her] arm above [her] head" and reduced strength. *Id*. The records notes that "this pain has gone on a full 3 years." *Id*. On exam, Petitioner's left shoulder was "very tender anteriorly" and her range of motion was restricted. *Id*. at 52. Her doctor believed she had a rotator cuff tear, ordered an MRI, and referred her to an orthopedist. *Id*. The MRI showed acromioclavicular joint degeneration and mild supraspinatus tendinopathy without evidence of tearing." Ex. 12 at 68-69.

Petitioner returned to the orthopedist on March 14, 2023, to discuss her MRI results. Ex. 19 at 1. She reported left shoulder pain, stiffness, and decreased strength. *Id*. She noted that she had to stop physical therapy due to the Covid-19 Pandemic, but had continued her home exercise program without relief. *Id*. She noted that her "symptoms have worsened at this time." *Id*. She was diagnosed with rotator cuff tendinitis, prescribed a Medrol dosepak, and referred back to physical therapy. *Id*. at 3. She returned on April 25, 2023. *Id*. at 4. She reported improvements in range of motion with therapy,[3] but continued weakness. *Id.* A second surgery was recommended. *Id*. at 6.

Petitioner had a second arthroscopic surgery on June 2, 2023, which included a labral tear repair. Ex. 19 at 7. During her post-operative follow-up appointments, Petitioner was encouraged to continue physical therapy.[4] *See* Ex. 19 at 16-17; Ex. 23 at 11-15. On September 26, 2023, just under four months after surgery, Petitioner reported improvement in her range of motion and only occasional soreness in her shoulder. Ex. 23 at 8.

Petitioner's orthopedist provided handwritten answers to a list of typewritten questions. *See* Ex. 25. He has opined that Petitioner's injury is permanent and recommends a functional capacity evaluation. *Id*. at 2.

## III.  Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule

---

[3] Petitioner has not filed any physical therapy records for this period.

[4] Petitioner has not filed any physical therapy records for the period after her second surgery.

does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact - Injury Localized to Vaccinated Arm

Respondent argues that Petitioner cannot sustain a Table SIRVA claim because her "symptoms were not limited to [her] left shoulder." Resp. at 9. In support, he points to Petitioner's first medical visit, during which she "reported pain radiating down her neck in addition to pins and needles sensations all over her hands." *Id*. at 9-10.

While the record of Petitioner's initial visit with her PCP on October 1, 2019, mentions symptoms radiating from her shoulder down to her hand, the bulk of the remaining filed evidence focuses on Petitioner's left shoulder. Ex. 2 at 6-9. And although Petitioner's PCP initially evaluated her cervical spine, he found no condition that explained her shoulder symptoms and did not recommend any further evaluation or treatment. *See e.g.,* Ex. 2 at 5; Ex. 3 at 63. Further, Petitioner did not continue to complain of radiating symptoms. By her first visit with her orthopedist on November 4, 2019 - less than two months after her vaccination - she specifically denied any radiating symptoms. Ex. 6 at 17. From then on, Petitioner received treatment focused solely on her shoulder symptoms, including imaging, physical therapy, cortisone injection, and surgery. In fact, Respondent does not cite any records other than the first treatment record. *See.* Resp. at 9-10.

While I acknowledge the one report of radiating pain, it is outweighed by the majority of evidence in Petitioner's medical and treatment records establishing that her pain and decreased range of motion was limited to her left shoulder. Despite Respondent's argument, Petitioner's medical records need not be devoid of all reference to pain or other symptoms outside the affected shoulder. *See Kahler v. Sec'y of Health & Human Servs.*, No. 19-1938V, 2024 WL 1928451, at *8 (Fed. Cl. Spec. Mstr. Mar. 27, 2024). In fact, "claims involving musculoskeletal pain *primarily* occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body." *Id. (citing K.P. v. Sec'y of Health & Hum. Servs.*, No. 19-65V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022).

Therefore, I find that Petitioner has provided preponderant evidence that her pain and limited range of motion were limited to her left shoulder.

## V.    Ruling on Entitlement

### A.  Requirements for Table SIRVA

I have found that Petitioner has preponderantly established that her symptoms were limited to her vaccinated shoulder. 42 C.F.R. § 100.3(c)(10)(iii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B.  Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in her left deltoid on September 11, 2019. Ex. 1 at 4; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for this vaccine-related injury, and there is no evidence to the contrary. Ex. 6 at ¶9; Section 11(c)(1)(E) (lack of prior civil award). Finally, the records indicate that Petitioner has suffered the residual effects of her vaccine-related injury for more than six months and Respondent has not argued otherwise. *See e.g.*, Ex. 4 at 52; Ex. 12 at 49; Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master